IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN & CASSANDRA SPRINGER, Individually and as Guardians Ad Litem for their minor children CAMERON S. and CHRISTIAN S.,<br><br>　　　　　　　Plaintiffs,<br><br>　　　v.<br><br>COUNTY OF PLACER, THOMAS LIND, individually and as an employee of the COUNTY OF PLACER, RHONDA LARSON, individually and as an employee of the COUNTY OF PLACER, DAVID JOHNSON, individually and as an employee of the COUNTY OF PLACER, JENNIFER COOK, individually and as an employee of the COUNTY OF PLACER, DEBBIE MORRIS, individually and as an employee of the COUNTY OF PLACER, LISA GRIMALDI, individually and as an employee of the COUNTY OF PLACER, and Does 1-10 inclusive.<br><br>　　　　　　　Defendants. | 02:06-cv-0310-GEB-DAD<br><br><br><br><br>ORDER* |

　　　Defendants move to dismiss Plaintiffs' 42 U.S.C. section 1983 ("section 1983") claims under Federal Rule of Civil Procedure 12(b)(6), and request that the Court decline to excise supplemental jurisdiction over Plaintiffs' remaining state law claims if the

---

　　　* This motion was determined suitable for decision without oral argument. (Order, May 19, 2006, 3-4).

1

section 1983 claims are dismissed.[1]  Plaintiffs filed an untimely opposition to the motion.  (See Order, May 19, 2006.)

BACKGROUND

Plaintiffs John and Cassandra Springer are the parents and primary custodians of nine-year-old Plaintiff Christian and two-year-old Plaintiff Cameron.  (Pls.' Compl. ¶ 6.)  Defendants Johnson, Morris, Cook, Grimaldi, Larson, and Lind ("individual Defendants") are social workers employed by Defendant Placer County.  (Id. ¶¶ 10-15.)

On January 31, 2005, John and Cassandra disciplined Christian for placing ice in Cameron's diaper.  (Id. ¶ 25.)  While disciplining him, John "pinched the tip of Christian's nose with his fingers and thumped him on the chest with the tip of his finger." (Id. ¶ 26.)  The next morning, Christian asked Cassandra to put makeup on his nose to cover a "slight discoloration."  (Id. ¶ 29.)  Cassandra refused because the discoloration "was so slight it was barely visible."  (Id.)  Christian then left for school.  (Id.)

Towards the end of the school day, a teacher noticed the discoloration on Christian's nose.  (Id. ¶ 31.)  When the teacher asked Christian about it, he said that his father pinched him and it "hurt."  (Id. ¶ 31.)  Christian subsequently spoke about the incident with the school secretary and principal, one of whom called Child Protective Services.  (Id.)  In response to the call, Defendant Morris went to the school and interviewed Christian.  (Id. ¶ 34.)  During that interview, Christian told Defendant Morris his father spanks him "maybe" once a week when he does "something bad," and mentioned "something about his father's drinking."  (Id. ¶¶ 32, 34.)

---

[1]  All references to "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

Defendant Morris called the Rocklin Police Department, and Officer Seawell was dispatched to the school. (Id. ¶ 34.) With Defendant Morris present, Officer Seaweall interviewed Christian and heard information "that differed significantly" from what Christian previously told Defendant Morris. (Id. ¶ 35.) When the interview ended, Officer Seawell went to the Springer home to arrest John. (Id.) Defendant Morris placed Christian into protective custody, without a warrant and without attempting to contact or interview John and Cassandra. (Id. ¶ 41.) Christian was transported to a Placer County shelter, and Defendant Johnson placed Christian in foster care a few days later.[2] (Id. ¶¶ 41, 46.) After approximately three months, Christian was returned to his family. (Id. ¶¶ 49, 66.)

Sometime during those three months, Defendants Morris and Johnson prepared and submitted documents to the juvenile court, and Defendants Cook, Grimaldi, Larson, and Lind signed documents submitted to the juvenile court.[3] (Id. ¶¶ 12-15, 32, 48.) Plaintiffs allege these documents contained "lies, misrepresentations, omissions of material fact, and . . . were completely devoid of any exculpatory information." (Id. ¶ 48.) For example, Plaintiffs allege Defendants Morris and Johnson represented that John "abuses alcohol which periodically renders him unable to care for his son," even though John only drinks "a beer now and again." (Id. ¶ 32.) In addition, Defendant Morris represented that John "was a physically abusive father and Christian was at risk of serious bodily injury," even

---

[2] Plaintiffs allege a variety of events occurred while Christian was in foster care, but these allegations do not form the basis of their section 1983 claims.

[3] The documents include a "detention report, jurisdiction report, and W&IC 300 Petition." (Pls.' Compl. ¶ 32.)

3

though Cassandra and John told Defendant Morris that Christian "had been spanked only a few times in his entire life." (Id. ¶ 34.) Plaintiffs further allege the juvenile court documents did not include Christian's conflicting statements to Officer Seawell or include John and Cassandra's "version" of the events. (Id. ¶¶ 30, 35.)

On February 13, 2006, Plaintiffs filed this federal action, in which they assert two section 1983 claims: (1) Defendants Morris and Placer County violated the Fourth and Fourteenth Amendment by removing Christian from his family, and (2) all Defendants violated the Fourteenth Amendment by continuing to detain Christian away from his family. (Id. ¶¶ 59-67.) Plaintiffs also assert state law claims for violation of the Banes Act, Cal. Civ. Code § 52.1, false arrest and/or imprisonment, and intentional infliction of emotional distress. (Id. ¶¶ 68-85.) Defendants seek dismissal of Plaintiffs' section 1983 claims, arguing that the individual Defendants are entitled to absolute and/or qualified immunity, and that Plaintiffs have not alleged sufficient facts to support a claim against Defendant Placer County under Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 690 (1978). (Defs.' Mot at 5, 9.)

## DISCUSSION

Dismissal is appropriate under Rule 12(b)(6) if Plaintiffs failed (1) to present a cognizable legal theory, or (2) to plead sufficient facts to support a cognizable legal theory. Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-34 (9th Cir. 1984). When considering a Rule 12(b)(6) motion, all material allegations in the Complaint must be accepted as true and construed in the light most favorable to Plaintiffs. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996).

In addition, Plaintiffs are given the benefit of every reasonable inference that can be drawn from the allegations in their Complaint. Retail Clerks Int'l Ass'n v. Shermahorn, 373 U.S. 746, 753 n.6 (1963). Accordingly, a motion to dismiss must be denied "unless it appears beyond doubt that [Plaintiffs] can prove no set of facts in support of [their] claim which would entitle [them] to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

I.  Absolute Immunity

The individual Defendants argue they are entitled to absolute immunity on both section 1983 claims. (Defs.' Mot. at 5.) "[S]ocial workers are entitled to absolute immunity in performing quasi-prosecutorial functions connected with the initiation and pursuit of child dependency proceedings." Meyers v. Contra Costa County Dep't of Social Services 812 F.3d 1154, 1157 (1987). "However, the scope of this immunity is 'extremely narrow.'" Wolf v. County of San Joaquin, 2006 WL 11153755, at *3 (E.D. Cal. 2006) (quoting Miller v. Gammie, 355 F.3d 889, 898 (9th Cir. 2003)). "Thus, while social workers may claim absolute immunity for decisions to institute dependency proceedings and for submissions made to a court, they are not similarly protected when they take actions to detain juveniles prior to any dependency proceedings." Id. (citing Doe v. Lebbos, 348 F.3d 820, 825-26 (9th Cir. 2003), and Miller, 355 F.3d at 898).

A.  Removal of Christian

Plaintiffs allege Defendant Morris violated the Fourteenth Amendment by removing Christian from his family without conducting "a reasonable or moderately thorough investigation of the allegations, which removal was compounded and extended and accompanied by fraud, misrepresentations, and repeated failures to include exculpatory

5

1  evidence."  (Pls.' Compl. ¶ 61.)  Christian also alleges Defendant
2  Morris violated the Fourth Amendment by removing him from his family
3  without a warrant and without an imminent risk of serious bodily
4  injury.  (Id. ¶ 62.)

5         Defendant Morris is not entitled to absolute immunity from
6  the claim that Christian was removed without a warrant or a thorough
7  investigation because the removal allegedly occurred prior to the
8  initiation of juvenile court proceedings.  See Meyers, 812 F.2d at
9  1157 (holding a social worker did not have absolute immunity for his
10 actions prior to the initiation of child dependency proceedings);
11 Wolf, 2006 WL 11153755, at *5 (stating social workers do not have
12 absolute immunity for "actions to detain juveniles prior to any
13 dependancy proceedings").  However, Defendant Morris is entitled to
14 absolute immunity from the claim that she submitted false or
15 incomplete documents to the juvenile court.  See Mabe v. San
16 Bernardino County, 237 F.3d 1101, 1109 (9th Cir. 2000) (holding social
17 workers had absolute immunity for alleged submission of "false
18 evidence" to juvenile court); Wolf, 2006 WL 11153755, at *5 (holding
19 social workers had absolute immunity for "submissions to a court based
20 on an inadequate investigation of the allegations [and] . . . false
21 evidence").

22         B.  Continued Detention of Christian

23         Plaintiffs allege the individual Defendants violated the
24 Fourteenth Amendment by continuing to detain Christian away from his
25 family, which was "caused by . . . the complete failure or refusal of
26 Defendants to reasonably investigate the circumstances of the family
27 and the statements made by Christian, . . . withholding exculpatory or
28 contradictory information . . . in the . . . reports submitted to the

1  [juvenile] court, and fabricating [and] stating out of context . . .
2  the statements of Christian and others in an effort to mislead the
3  [juvenile] court."  (Pls.' Compl. ¶¶ 65-66.)  As discussed above,
4  Defendants are entitled to absolute immunity from the claim that they
5  submitted false documents to and withheld information from the
6  juvenile court.  (See supra page 6.)  However, Defendants are not
7  entitled to absolute immunity from the claim that Christian was
8  detained prior to the initiation of juvenile court proceedings due to
9  Defendants' failure to investigate the circumstances of the family and
10 the statements made by Christian.  (See supra page 6.)

II.  Qualified Immunity

The individual Defendants argue they are entitled to qualified immunity because Christian would have suffered imminent harm if he continued to live with his family and because prior case law had not informed Defendants that they could be subject to civil liability for their actions. (Defs.' Mot. at 5; Defs.' Reply at 8.)  "Qualified immunity shields government officials from liability for civil damages if, in light of clearly established law governing the challenged conduct, the official objectively could have believed the conduct was lawful."  Ram v. Rubin, 118 F.3d 1306, 1310 (9th Cir. 1997) (citing Carnell v. Grimm, 74 F.3d 997, 978 (9th Cir. 1996).

> In deciding a claim of [qualified] immunity, the court must first decide if a constitutional right has been violated on the plaintiffs' alleged facts.  If so, the court must then decide whether this right was clearly established at the time of the unconstitutional conduct.  A right is clearly established if a reasonable official would understand that what he is doing violates that right.

Rogers v. County of San Joaquin Human Services Agency, 363 F. Supp. 2d 1227, 1231 (E.D. Cal. 2004) (internal quotations omitted).

7

1              A.   Removal of Christian

2         "The first step in the qualified immunity analysis is to ask whether, accepting [P]laintiffs' alleged facts, [Defendants'] conduct violated the Constitution."  Id.  As discussed above, Plaintiffs allege Defendant Morris violated the Fourth and Fourteenth Amendment by removing Christian from his family without conducting an adequate investigation.  (Pls.' Compl. ¶¶ 59-67.)  The Fourteenth Amendment guarantees "that parents will not be separated from their children without due process of law except in emergencies."[4]  Rogers, 363 F. Supp. 2d at 1235 (citing Mabe, 237 F.3d at 1107).  Consequently, social workers "may remove a child from the custody of [his] parent[s] without prior judicial authorization only if the information they possess at the time of the seizure is such as provides reasonable cause to believe that the child is in imminent danger of serious bodily injury and that the scope of the intrusion is reasonably necessary to avert that specific injury."  Wallis v. Spencer, 202 F.3d 1121, 1138 (9th Cir. 2000); Mabe, 237 F.3d at 1100.  Further, social workers cannot remove a child "suspected of being abused or neglected unless reasonable avenues of investigation are first pursued, particularly where it is not clear that [abuse] has been-or will be-committed."  Wallis, 202 F.3d at 1138.

          Construing the allegations in the Complaint in the light most favorable to Plaintiffs, Defendant Morris did not have reasonable cause to believe Christian was in imminent danger when she removed him

---

[4]    The same legal standard applies when evaluating Fourth and Fourteenth Amendment claims based on the removal of a child from his family.  E.g., Lebbos, 348 F.3d at 826, n.9; Rogers, 363 F. Supp. 2d at 1235, n.6.  Accordingly, the qualified immunity analysis of the alleged Fourth and Fourteenth Amendment violations has been combined.

1 from his family.  Christian had not suffered any type of severe bodily
2 injury prior to his removal, but only had a "slight discoloration" on
3 his nose that he received when his father "pinched" him.  Cf. Rogers,
4 363 F. Supp 2d at 1235 (stating a social worker should consider "the
5 severity of the threat to the child").  Furthermore, although
6 Christian told Defendant Morris that his father spanks him, he did not
7 disclose any other information about the spanking that would lead
8 Defendant Morris to believe the spanking was abusive in nature.  Cf.
9 Calabretta v. Floyd, 189 F.3d 808, 819 (9th Cir. 1999) (observing that
10 spanking is not prohibited under California law, only "cruel or
11 inhuman corporal punishment or injury resulting in traumatic
12 condition").  In addition, the allegations in the Complaint indicate
13 that Christian did not appear to be in any immediate harm from the
14 spanking because Christian said his father spanked him "maybe" once a
15 week when he did "something bad."  See Mabe, 237 F.3d at 1108 (no
16 justification for removal of child because the "delay of a few hours
17 . . . to obtain [a] warrant" would not have put the child "in imminent
18 danger of serious physical injury").  Finally, although Christian said
19 "something" about his "father's drinking," he did not indicate his
20 father abused alcohol or was unable to care for him.  Cf. Lebbos, 348
21 F.3d 820 (holding child was in imminent danger of serious bodily
22 injury because her father abused alcohol and neglected her, and
23 because she complained of vaginal pain and had redness in her vaginal
24 area).  Therefore, it was not clear Christian had been abused or would
25 be abused in the future, and consequently, Defendant Morris had an
26 obligation to pursue "reasonable avenues of investigation" before
27 removing Christian from his family.  See Wallis, 202 F.3d at 1138.
28

Nevertheless, Defendant Morris allegedly removed Christian based only on her interview with him.

Furthermore, since Defendant Morris allegedly had no information whatsoever that implicated Christian's mother in any past abuse, any "threat of future abuse" would have been "attributed [solely] to [his] father." Mabe, 237 F.3d at 1110. As a result, Christian could "have been taken with [his] mother to a shelter, or placed under some other form of protective custody with her," rather than placed in foster care with strangers. See Wallis, 202 F.3d at 1140. Consequently, the scope of the intrusion, i.e. the removal of Christian from his entire family, was not reasonably necessary to avert potential abuse by his father. See id. (holding the scope of the intrusion was greater than necessary because the children were removed from the custody of their mother, even though the allegations of abuse concerned only the father).

Therefore, Plaintiffs have sufficiently alleged that the warrantless removal of Christian from his family violated their constitutional right "to live together without governmental interference" absent emergency circumstances. See Mabe, 237 F.3d at 1107. Although Defendant Morris would still be entitled to qualified immunity if this right was not clearly established at the time of the alleged unconstitutional conduct, this constitutional right "has been clearly established in this circuit for some time . . . ." Wolf, 2006 WL 11153755, at *5; Mabe, 237 F.3d at 1107 (holding "[t]he constitutional right of parents and children to live together without governmental interference is clearly established"); Rogers, 363 F. Supp 2d at 1237 (stating "[t]he law is now clearly established that the officer must have reason to believe that immediate removal is

necessary to avoid a recurrence of abuse"). Therefore, Defendant Morris is not entitled to qualified immunity at this stage in the proceedings because "[her] action[s], as alleged, [were] not reasonable in light of clearly established law . . . ." Wolf, 2006 WL 11153755, at *5.

### B. Continued Detention of Christian

As discussed above, Plaintiffs allege the individual Defendants violated the Fourteenth Amendment by continuing to detain Christian without conducting a reasonable investigation. (Pls.' Compl. ¶ 66.) Since the Court has already determined Defendant Morris is not entitled to qualified immunity for removing Christian from his family, it follows that the individual Defendants are not entitled to qualified immunity for his continued detention, which was premised on the same facts as his removal. See Wolf, 2006 WL 11153755, at *5 ("Because the court has rejected qualified immunity for claims one and two based on a determination that defendants failed to show that, based on the allegations in the complaint, the children were in imminent danger, it follows that it must reject defendants' arguments for qualified immunity on claim three.").

### III. Municipal Liability under Monell

Defendant Placer County argues Plaintiffs' section 1983 claims should be dismissed because "[w]here the facts do not support an underlying constitutional deprivation by a public employee, in most cases no Monell claim can stand against the public entity." (Defs.' Mot. at 9.) As discussed above, Plaintiffs have sufficiently pled a constitutional violation. (See supra pages 9-10.) Therefore, Defendant Placer County's motion to dismiss is denied.

## CONCLUSION

Defendants' motion to dismiss is granted in part and denied in part. Since the Court has not dismissed Plaintiffs' section 1983 claims in their entirety, the Court will continue to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims.

IT IS SO ORDERED.

Dated:  June 8, 2006

<u>/s/ Garland E. Burrell, Jr.</u>
GARLAND E. BURRELL, JR.
United States District Judge