IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOHN & CASSANDRA SPRINGER,        )
individually and as Guardians Ad )
Litem for their minor children   )
CAMERON S. and CHRISTIAN S.,     )
                                  )        2:06-cv-310-GEB-DAD
                  Plaintiffs,     )
                                  )
        v.                        )        ORDER
                                  )
COUNTY OF PLACER, THOMAS LIND,    )
RHONDA LARSON, DAVID JOHNSON,     )
JENNIFER COOK, DEBBIE MORRIS, and )
LISA GRIMALDI,                    )
                                  )
                  Defendants.     )
_____ )

        Defendant Debbie Morris ("Morris") moves for summary

judgment on Plaintiffs' federal claims, arguing her qualified immunity

defense shields her from liability for those claims.[1]  Plaintiffs

oppose Morris's motion and move to strike portions of Morris's

declaration submitted in support of her motion and portions of the

statement of undisputed facts referencing that declaration.  All

_____

        [1]     Plaintiffs agreed to dismiss their federal claims against the
other Defendants and those claims were dismissed at the hearing on the
motion held on May 29, 2007.

1

1  Defendants request the Court decline to continue exercising

2  supplemental jurisdiction over the state law claims if Morris's motion

3  is granted.

4                              BACKGROUND

5         Plaintiffs John and Cassandra Springer, individually and as

6  guardians ad litem for their minor children Christian S. and Cameron

7  S., allege that Morris, a Placer County social worker, took Christian,

8  who was eight years old at the time, into protective custody without a

9  warrant, in violation of Christian's fourth amendment right to be free

10 from a warrantless seizure and the fourteenth amendment familial

11 association rights of all Plaintiffs.  (Pls.' Compl. ¶ 59; Morris

12 Decl., Ex. A at 2.)

13        On or about January 31, 2005, John Springer pinched the tip

14 of Christian's nose with his fingers in the course of disciplining

15 him.  (Defs.' Statement of Undisputed Facts ("Defs.' SUF") ¶¶ 3, 4.)

16 On February 1, 2005, Christian's teacher noticed a discoloration on

17 Christian's nose and asked him about the mark.  (Id. ¶ 6.)  Christian

18 responded that his father had pinched his nose and that it hurt.  (Id.

19 ¶ 7.)  Child Protective Services ("CPS") was contacted concerning the

20 suspected abuse of Christian and thereafter CPS issued an emergency

21 response which provided the following reason:

22              Child is a special ed student.  Child was
                suspended from school on Friday, for Monday.  He
23              came back to school today with marks and bruises
                on face (nose and chin).  Child states his father
24              was mad at him for getting into trouble at school,
                and slapped him in the face, pinched him on the
25              nose, hit him in the stomach, and spanked him on
                the bottom.  Child is in school until 2:45 PM.
26              ER - Debbie Morris responding.

27 (Morris Decl., Ex. A, at 1.)  As a result of CPS's determination that

28 an emergency response was needed to address the situation, Morris

                                2

responded to Christian's school and interviewed Christian.[2]   (Id.)
Morris spoke with Christian's teacher, who informed her that
Christian's parents had said they were at their wit's end with
Christian; that the father appeared tense and angry; and that the
mother let the father take the lead with Christian.  (Defs.' SUF ¶
20.)

        While interviewing Christian, Morris observed a red mark on
his nose which he stated came from his father pinching him hard.  (Id.
¶ 10.)  Christian also told Morris that he had been slapped by his
father twice on the left cheek, once on the right cheek, and that his
father had hit him on the "b-u-t-t" three times and it was still sore.
(Id. ¶¶ 9, 12, 13.)  Morris called the Rocklin Police Department and
Officer Jerrold Seawell was dispatched to the school to interview
Christian.  (Id. ¶ 21.)  After Officer Seawell interviewed Christian,
the officer informed Morris that he was going to the Springer home to
investigate the matter further.  (Morris Decl. ¶ 11.)  Christian told
Morris he was afraid his dad would hit him again if he found out
Christian had talked to a policeman and that he was afraid to go home
because his father might hurt him.  (Defs.' SUF ¶ 14, 16.)  By the
time Morris needed to make the determination regarding whether to
place Christian in protective custody, the school day had ended;
therefore, if Christian was not taken into custody he would ride the
bus home.  (Id. ¶ 45.)  Morris determined Christian was in imminent

---

        [2]   Plaintiffs move to strike portions of Morris's declaration and
the portions of the statement of undisputed facts referencing that
declaration.  However, Plaintiffs do not dispute that these statements
were made to Morris, they dispute only the veracity of the statements
themselves.  Since Morris's state of mind is at issue, these statements
are not admitted for their truth, but rather to show the effect the
statements had on Morris's state of mind.  Fed. R. Evid. 801(c).
Therefore, Plaintiffs' motion to strike is denied.

1  danger of serious bodily injury.  (Morris Decl. in Opp'n to Mot. to
2  Strike ¶ 1.)  Morris then consulted with Placer County Counsel because
3  the decision to take a child into protective custody must be made by
4  either County Counsel or a supervisor.  (Morris Decl. in Opp'n to Mot.
5  to Strike ¶ 5.)  Morris then took Christian into protective custody.
6  (Defs.' SUF ¶ 38.)

7                            DISCUSSION

8  <u>I.  Motion for Summary Judgment</u>

9         Morris asserts she is entitled to qualified immunity on
10 Christian's claim that taking him into protective custody violated his
11 fourth amendment right to be free from a warrantless seizure and all
12 Plaintiffs' claim that this violated their fourteenth amendment
13 familial association rights.  (Defs.' Mot. at 13:25-27.)

14        The determination of whether Morris prevails on her motion
15 "involves the difficult balancing of a family's right to autonomy
16 [and/or association] against the state's interest in protecting [a]
17 minor child[] from abuse."  <u>Baker v. Racansky</u>, 887 F.2d 183, 187 (9th
18 Cir. 1989).  "[S]ocial workers[] who remove a child from [his or her]
19 home without a warrant must have reasonable cause to believe that the
20 child is likely to experience serious bodily harm in the time that
21 would be required to obtain a warrant."  <u>Rogers v. County of San
22 Joaquin</u>, __ F.3d __, 2007 WL 1531829, at *4 (9th Cir. May 29, 2007).
23 "Serious allegations of abuse that have been investigated and
24 corroborated usually give rise to a 'reasonable inference of imminent
25 danger sufficient to justify taking [a] child[] into temporary
26 custody' if [he or she] might again be [abused] during the time it
27 would take to get a warrant."  <u>Id.</u> at *5.

28

                                  4

Morris was aware of the reason for CPS requiring an emergency response when she responded.  When Morris spoke to Christian's teacher, Morris was informed that the teacher suspected abuse because she observed a mark on Christian's nose.  (Defs.' SUF ¶ 6.)  During her investigation of these allegations, Morris personally observed the mark on Christian's nose and when Morris questioned Christian about the mark he responded that his father slapped him in three times on his face, pinched him on the nose very hard, and spanked him on the bottom.  (Morris Decl. Ex. A, at 1.)  In addition, Christian stated he was afraid to go home because his father might hurt him when he found out he talked to an officer; Morris knew that Christian's father was likely aware that Christian had spoken to an officer since Officer Seawell told Morris that he was going to go the Springer home to investigate the matter further; and Morris was told that Christian's mother let her husband take the lead with Christian. (Id. ¶¶ 14, 16; Morris Decl. ¶ 11.)  Christian would have gone immediately home had Morris not taken Christian into protective custody, and it would have taken several hours for Morris to obtain a warrant.  (Morris Decl. ¶ 15.)  Here, where Morris had corroborated allegations of child abuse, and was apprised of circumstances that gave rise to a reasonable inference that Christian would be exposed to an imminent risk of harm if he was not taken into protective custody, she had reasonable cause to take Christian into protective custody without a warrant.  See Rogers, 2007 WL 1531829, at *5.  For the stated reasons, Morris's motion for summary judgment is granted on Plaintiffs' federal claims.

III.  State Law Claims

Since all Plaintiffs' federal claims have been resolved, the issue is reached whether supplemental jurisdiction should continue being exercised over Plaintiffs' state law claims.  "[D]istrict courts may decline to exercise supplemental jurisdiction over a claim . . . [if] the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  The "discretion to decline to exercise supplemental jurisdiction over [Plaintiffs'] state law claims is triggered by [§ 1367(c)(3), and] is informed by the Gibbs values of economy, convenience, fairness, and comity." Acri v. Varian Assocs., Inc., 114 F.3d 999, 1001 (9th Cir. 1997) (en banc) (citing United Mine Workers v. Gibbs, 383 U.S. 715 (1966)) (internal quotation marks omitted).  "Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law."  Gibbs, 383 U.S. at 726.

Here, the Gibbs factors weigh in favor of dismissing Plaintiffs' state law claims.  Therefore, Plaintiffs' state law claims are dismissed without prejudice as of the date on which this order is filed.

IT IS SO ORDERED.

Dated:  July 9, 2007

GARLAND E. BURRELL, JR.
United States District Judge